May it please the Court, Gabriela Ramirez on behalf of Petitioner Alva Evelinda-Vasquez. May I reserve two minutes for rebuttal. The BIA erroneously determined that Petitioner failed to establish past persecution on account of a protected ground based on the following reasons. The evidence compels the conclusion that Petitioner established past persecution on account of imputed political opinion and that the government was unable or unwilling to control her persecutors. Did she receive death threats because she carried out specific arrests or simply because she was a police officer? No, she received death threats as she described on the record as constant death threats because of her work in an investigative capacity with the PNC in Guatemala. She certainly did work as a typical police officer patrolling the streets for some time with the PNC, but much of the threats that she described as constant death threats were her work in what was considered an operative unit, where she was charged with investigating corruption within the PNC. Then are you saying that there is a nexus to political opinion in this case simply because she was a police officer? No, Your Honor. No, there is no nexus simply because she was a police officer. The nexus arises from the nature of her role. As a threshold matter, the Petitioner was not an average police officer. She worked in what was an elite unit, which she described as private work, work that not everybody was aware of, work that her supervisor described as a, quote, operative. And because of her role in that position, which was more politically charged, that's why she received the death threats rather than her work as a typical police officer. You're relying on imputed political opinion or her membership in a particular social group? Primarily on imputed political opinion, Your Honor, as the Petitioner in this case worked in a politically charged position, in a position that was unique and significantly more high profile than that of your average police officer. Then would all people in that division be entitled to asylum? No, Your Honor, certainly not. And on these facts, though, the Petitioner would be entitled to asylum as the circumstantial evidence surrounding her case compels the inference that she was persecuted on account of this imputed political opinion. The IJ and the government's brief both erroneously compare the Petitioner's case to Cruz Navarro. And in Cruz Navarro, as the Court noted, there is no protection for the risks associated with average police work. But probably the most fundamental way that our case is different from Cruz Navarro is that our Petitioner was not involved in average police work. She was not interacting with crime in a face-to-face manner. She was involved in a position that targeted the corruption, that infiltrated the PNC, that was a large-scale operative, and was not the type of position that the officer in Cruz Navarro held. Whereas, the Court noted, he didn't choose the work that was assigned to him. It was simply part of the typical work as an officer during that time. And here, the Petitioner was promoted to this position, a position that she accepted. And by virtue of this position, she was engaging in work that no longer had the risks that are associated with being an average police officer. This position was large-scale. It was a top-down approach. And the systemic nature of the corruption that she was targeting, probably the most probative piece of evidence of how systemic this corruption was, are the U.S. Department of State reports that are included in the record for 2007 and 2006. And both reports reflect that. Maybe I misread your brief. But I didn't quite catch this argument in your brief. I mean, I understood your position to be that she was a former police officer, a member of a group. And the nexus for what happened to her after she left the police force, the persecution, the alleged persecution that you identify, that that was the alleged nexus to a social group. I didn't get it. So what you seem to be arguing now is that she was involved in some very unique investigative work, that having been involved in that work, she was ferreting out corruption. And because she was ferreting out corruption, that's the imputed political opinion? Is that the argument? Right, Your Honor. Yes, our brief did discuss her role, her initial role as a police officer. And we did make note of that and had some mentions of the social group language. But we mentioned in our brief as well the Velarde case. And that case is a case about imputed political opinion and a high-profile position. And in our brief, we analogized our case to that case, explaining that Petitioner's position was like the position in Velarde v. INS. There, the officer was a former security detail to the Peruvian president, and that officer also had previously worked in gathering intelligence for the Peruvian government. And like the Petitioner in this case, who worked gathering intelligence and information about corruption that had infiltrated the PNC. And in that case, the court held that where an asylum applicant is in a politically charged position, a position that's unique, that is more high-profile, that tends to bolster the inference that there was an imputed political opinion. And in this case, that was precisely the position that the Petitioner held. It was a position working, exposing the corruption that had infiltrated the fabric of the PNC. It was a position that was equivalent to whistleblowing, like the Gravo v. INS case. And in Gravo v. INS... So let me ask you this. What's the evidence then in the record that shows that her persecutors were out after her because she was involved in exposing corruption? The evidence is circumstantial, Your Honor. Well, just point to me the circumstantial evidence. Absolutely, Your Honor. Other than the fact that she was just employed in this position, what did the persecutors do or say? The persecutors persecuted her after she had already left the PNC by virtue of the murder of her uncle. And in numerous cases, Velarde v. INS, Gomez de Ballos, Artigas-Turcios, this court has found that where there's persecution after a government employee has resigned, in their position where the persecution is no longer, even during the course of the employment, then that tends to bolster the inference that it was on account of an imputed political opinion, as there was no longer any risk associated with the position because... Now, did they send her any notes or anything? You know, we're angry with you, we're going to get you because you were investigating? Or did they say anything to her? No, Your Honor. Did they go to her house and write nasty notes on the door or anything like that? No, Your Honor, there is no direct evidence. The record is devoid of direct evidence, but there is sufficient circumstantial evidence to compel this conclusion. And based on the letter provided by Petitioner's supervisor, the commissioner of the 3rd District of the PNC, who also harbored the belief that this was on account of her imputed political opinion, based on the death of her uncle, whom she testified she was, quote, very close to. She stayed at his home and she'd received death threats during the time... You wanted to save two minutes. Yes, Your Honor, thank you. And based on these reasons, we request that the Court reverse the BIA. May it please the Court. My name is Edward Wiggers and I represent the respondent in this matter. The record does not compel the conclusion that Petitioner experienced persecution on account of an enumerated ground or that she possesses a well-founded fear thereof. The threats that she received derived either from the gang members or other criminals that she was arrested or was investigating and are attributable either to the generalized violence in Guatemala or to her specific actions as a police officer. And as such, they do not bear a nexus to an enumerated ground. Is there any evidence that gang members targeted the police to discourage citizens from joining the police? No, Your Honor, not in the record. All right. There is no evidence of the police being targeted other than what Petitioner testified to with the threats that she received from her specific activities as a police officer, both from the arrests and from the investigations. And regarding her work as an investigator, she apparently started out on a foot patrol and then transferred into investigation. She was investigating infiltrators, gang members who had gotten positions in the police department and were giving information on the police's actions to other gang members who were engaged in other criminal activities. That's a far cry from the situation in the politically charged case that Petitioner cites where the police officer in question was a bodyguard for the president's daughter. Apples and oranges as far as those positions are concerned. What about her status as a formal police officer? Pardon me, Your Honor? What about her status as a formal police officer? Is there a nexus from the persecution acts to her status as a formal police officer? Not in this case, Your Honor, because all the threats occurred while she was still on duty as a police officer. The only incident that occurred after she left the police force was the death of her uncle, committed by parties unknown. All she said was he received a blow to the head and she hypothesized and speculated that it may have been gang members who had killed him. But there was no showing beyond the fact that he was her uncle and she occasionally stayed with him and she patrolled in that area, that the gang members or the random criminals who might have killed her uncle did so either because she was a police officer or because she left the police force. All the evidence pertaining to Petitioner pointed to threats stemming from her activities as a police officer. And even after she leaves the police force, if the activities she engaged in while she was a police officer are the basis for the claims of persecution, then that's still no nexus. It has to be because she used to be a police officer. She's not presenting the situation where, for example, there's been a change in regime, that the new regime gets rid of all the former police officers because they see them as politically affiliated with the past regime. And then they go about persecuting everyone who used to be a police officer because they used to be a police officer, because they're imputing that political opinion. We don't have that here. What we have is she was a police officer. She received some threats because she arrested people and investigated criminals. And then when she left the police department, her uncle died, killed by parties unknown, and we have nothing else. That is not enough to compel a finding that no reasonable fact finder could help but find that there's a nexus to an enumerated ground in this case. Assuming that we agree with you, this is a rather sympathetic case. The IJ found that she was credible, that she did receive these threats. Her supervisor stated the government does not protect officers in her position. She has a U.S. citizen daughter. Is there any hope that this case could be resolved through mediation? There is an outside possibility, Your Honor. Petitioner does have a criminal conviction, and in my experience, that's been a difficult point with prosecutorial discretion questions, which of course the appropriate route would be through mediation. We could potentially explore that. I don't hold out much hope for it based on my past efforts in that regard, but it is an avenue that is out there. Thank you. Okay. I would just reiterate, of course, Your Honor, that actually has no bearing on the issue. Yes, that's clear. We understand that. And since the record does not compel the conclusion that she experienced past persecution on it or a well-founded fear of persecution on an enumerated ground, we request that the court deny the petition for review. Okay. Thank you, counsel. Thank you. You had reserved two minutes. Thank you, Your Honor. Your Honor, the government dismisses the death of Petitioner, his family member, as having no nexus to the persecution in this case. This court has held that the death of a family member can be highly probative when the circumstances surrounding that family member indicate past persecution on account of imputed political opinion. In this case, this was a family member that wasn't just an uncle. He was very close to the petitioner. She had been threatened in his neighborhood, and she had received constant threats to her family as reflected by the record. And based on those circumstances, in this case, this death is highly probative of persecution after she left her post at the PNC. And while we certainly don't intend on equating Petitioner's position to that in Velarde v. INS, her position was nonetheless politically charged, as it involved exposing systemic corruption, as it was in a unit beyond that of an average police officer, as it involved working in a top-down approach, where she sought to expose the corruption that had infiltrated the PNC. And it's certainly not identical to the Velarde case, but it has those same elements of being in a unique role, of being in a position where, as explained in Graba v. INS, when exposing corruption that is systemic rather than aberrational, that conduct is necessarily political. And in this case, that was precisely what the Petitioner's role was. It was exposing conduct that was systemic, that was institutionalized, and as a result, it was necessarily political. Thank you, counsel. We appreciate your arguments this morning. The matter is submitted at this time.
judges: Nelson, Paez, Nguyen